IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GEOFFREY W. FREEMAN, # N-40858, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14-cv-614-JPG |
| ) | |
| MICHAEL ATCHISON, ) | |
| SALVADOR GODINEZ, ) | |
| and KIM BUTLER, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff is currently incarcerated at Menard Correctional Center ("Menard"), where he is serving a life sentence. He brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, claiming that in 2012, Defendants implemented a racially-motivated policy to confiscate all typewriters from Menard prisoners, which has had a disparate impact on African-American inmates' and older inmates' ability to access the courts. Plaintiff's typewriter was taken away before this policy was adopted. After this, he filed numerous grievances, and was also involved in state court litigation against prison officials. As retaliation for this protected activity, a false disciplinary report was brought against Plaintiff and he was punished with segregation. The named Defendants are Michael Atchison, Deputy Director of the Illinois Department of Corrections ("IDOC"); Salvador Godinez, IDOC Director; and Kim Butler, the Menard Warden.

In his lengthy complaint[1] (Doc. 5), Plaintiff first outlines a number of statistics gleaned

---

[1] Plaintiff's original complaint (Doc. 1) was filed with a number of exhibits randomly inserted in the middle of the statement of claim. Several days after the instant case was filed, the Court received another copy of the complaint, which was filed as a new case (No. 14-cv-629-NJR). However, when it was discovered that the complaints were identical, the duplicate case was closed, and the later-submitted

from a report of the John Howard Association, Menard's Internal Audit Report, a statistical report from the United States Department of Justice ("DOJ") (2005-2014), and *Halbert v. Michigan*, 545 U.S. 605, 621 (2005) (referencing DOJ statistical report as to the percentages of state prisoners who are illiterate, have learning disabilities, or suffer from mental illness) (Doc. 5, pp. 6-8). He states that between 2005 and 2012, the percentage of Menard inmates who are African-American has greatly increased as the percentage of white prisoners has declined, and the average age of all Menard prisoners has increased. Along with those changes in racial and age makeup, the number of African-American Menard inmates who are illiterate, learning-disabled, or suffer from age-related impairments such as arthritis, has greatly increased. He claims that between June 2012 (when prisoners' typewriters were removed) and April 2014, the number of *pro se* filings submitted by African-American Menard inmates, especially those over age 50, has fallen. However, white prisoners' *pro se* filings have increased over this same period.

Plaintiff claims that the Defendants' decision to confiscate Menard prisoners' personal typewriters was prompted by the increase in the numbers of elderly or illiterate African-American inmates, who were disproportionately less able to hand-write their court documents, rather than the security concerns that were the official rationale for the no-typewriter policy (Doc. 5, pp. 8-11). Since Plaintiff's typewriter was taken, he has had to hand-write his legal documents with state-issued pens, which are difficult to write with and cause him joint pain due to his arthritis (Doc. 5, p. 31). He notes that 70% of all the typewriters taken from Menard inmates had been owned by African-American prisoners (Doc. 5, p. 11). Further, he claims that the taking was "designed to cause an eruption of violence from the Black population" (Doc. 5,

---

complaint (along with its exhibits) was filed in this case as the First Amended Complaint (Doc. 5). This amended pleading consists of a 39-page handwritten complaint and 42 pages of exhibits.

pp. 12-13). He believes such a surge of violence was meant to support prison officials' efforts to keep the state supermax prison at Tamms open. The typewriter restriction had a disparate impact on the ability of African-American and older inmates to complain to the courts or other agencies about their conditions of confinement.

On June 3, 2012, just before the typewriters were taken, two Black inmates attacked a white officer at Menard. Plaintiff claims those prisoners were then beaten by guards "at the behest of [Defendant] Atchison" (Doc. 5, p. 12). Two days later, on June 5, 2012, Defendant Atchison ordered all prisoners (including Plaintiff) removed from their cells. While the inmates were kept in the prison chapel, Plaintiff's typewriter was removed from his cell, as were those of all other prisoners. This was done without any notice, and before the announcement of any rule or policy – the official policy banning typewriters was not issued until July 23, 2012. *Id*. Plaintiff also claims that he was improperly designated as having a mental health problem in order to justify the taking of his typewriter (Doc. 5, p. 13).

Plaintiff filed a series of grievances against Defendant Atchison between June 5, 2012, and February 5, 2013, over the confiscation of his typewriter and other matters (Doc. 5, pp. 13-16). He notes that over the past 28 years of his incarceration, he had no history of assaultive behavior or weapons violations (Doc. 5, p. 17).

Jumping ahead to April 10, 2014, Plaintiff states that on that date, Menard was on a Level-1 lockdown, and Plaintiff knew that his housing unit was scheduled for a shakedown on April 14. *Id*. After Plaintiff and his cellmate were moved to another area of the prison, the search of their cell turned up a homemade knife sewn into a pillow, which was allegedly found on Plaintiff's bottom bunk (Doc. 5, pp. 18, 22, 24). Defendant Butler tried to coerce Plaintiff's cellmate to say he saw Plaintiff with the knife, but he refused (Doc. 1, p. 24). Plaintiff likewise

denied responsibility for the weapon and refused to implicate his cellmate.  Both were charged and found guilty by Defendant Butler of a weapon violation, and each was punished with one year in segregation (Doc. 1, pp. 25).  He further complains that he was denied due process in the disciplinary matter because he was not provided with a "Hearing Investigator," he was not given a polygraph test, and there was no investigation of the matter (Doc. 5, p. 19).  In addition, he has been threatened with criminal prosecution for the weapon violation (Doc. 5, p. 25).

Plaintiff claims that he was framed for the knife charge in retaliation for his grievance activity that began with the June 2012 confiscation of his typewriter.  A further motive for the alleged retaliation was Plaintiff's action of filing a motion to intervene in a pending state court lawsuit, which had been brought by correctional officers represented by AFSCME to challenge the Illinois Governor's proposed closure of the Tamms Correctional Center (Doc. 5, pp. 20-22; 59-61).  In his motion, he accused the guards of fraud, manufacturing evidence, and instigating a fatal attack on a Menard prisoner (Doc. 5, pp. 23-24).  Soon after filing his motion, Plaintiff was verbally threatened, but does not say who issued the threat.  He also sued Defendant Atchison in state court.

Based on these factual allegations, Plaintiff asserts three claims:  (1) Retaliation claim (falsely charging Plaintiff with possession of a knife) for the exercise of his First Amendment rights to file grievances and court documents, against Defendants Butler, Atchison, and Godinez (Doc. 5, pp. 23-26; 33); (2) Racial and age discrimination claim against Defendants Atchison and Godinez, who confiscated typewriters from Plaintiff and other African-American inmates in order to obstruct them from seeking redress in court; African-American inmates and older inmates were disproportionately affected by these Defendants' July 2012 policy prohibiting individual possession of typewriters in Menard and other maximum-security prisons (Doc. 5, pp.

26-30; 34); (3) Access to courts claim against Defendants Atchison and Godinez, whose July 23, 2012, no-typewriter policy hinders African-American and elderly inmates such as Plaintiff (who is an African-American over age 50) from seeking redress in the courts, in comparison to white inmates and inmates in medium or minimum-security facilities (Doc. 5, pp. 30-32; 35-36).

Plaintiff does not seek monetary compensation. Instead, he seeks injunctive relief in several forms. His requests include an order against Defendant Butler to show cause why Plaintiff's April 2014 disciplinary report should not be expunged as false and retaliatory and the expungement of that report; an order preventing the enforcement of the July 23, 2012, no-typewriter policy to all takings that occurred prior to that date (presumably, this would result in the return of Plaintiff's confiscated typewriter); and an order rescinding all policies that have a disparate impact on African-American Menard inmates or on prisoners older than age 50 of any race (Doc. 5, pp. 36-39).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal causes of action, which shall receive further review:

**Count 1:** Retaliation claim against Defendant Butler, for falsely charging Plaintiff with possession of a knife and punishing him with segregation, because he filed grievances and pursued court actions against Defendant Atchison and other prison employees;

**Count 2:** Racial and age discrimination claims against Defendants Atchison and Godinez for confiscating Plaintiff's typewriter on June 5, 2012, and adopting a policy on July 23,

2012, prohibiting Menard inmates from possessing typewriters in their cells.

However, **Count 3** of the complaint, alleging that the policy restricting inmates from owning typewriters has infringed upon their right to access the courts, shall be dismissed without prejudice, as discussed below.

### Count 1- Retaliation

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000). Plaintiff claims that he experienced an adverse action (the disciplinary charge and punishment, which he suggests was based on a planted weapon) that would likely deter First Amendment activity in the future, and that his First Amendment activity was "at least a motivating factor" in the decision to take the retaliatory action. *See Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009).

According to Plaintiff's factual allegations regarding the April 2014 charge for possession of the knife, Defendant Butler was the only one of the named parties who was personally involved in some fashion with the handling of that disciplinary matter. Plaintiff does not describe any actions taken by either Defendant Atchison or Defendant Godinez with regard to that matter. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). The complaint does not indicate that the latter two Defendants had any personal involvement in the alleged retaliation.

Furthermore, the doctrine of *respondeat superior* does not apply to actions filed under 42

U.S.C. § 1983. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted); *see also Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Thus, neither Defendant Atchison or Godinez can be held liable in their supervisory capacity for the unconstitutional action of a subordinate prison official.

For these reasons, **Count 1** shall proceed only against Defendant Butler; the retaliation claim is dismissed without prejudice as to Defendants Atchison and Godinez.

Aside from Plaintiff's claim that the disciplinary action was motivated by retaliation, he asserts that his due process rights were violated during the disciplinary proceedings. However, his description does not raise any due process concerns. Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). In addition, the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).

Plaintiff objects to the disciplinary proceeding because he was not provided with a "hearing investigator," was not given a polygraph test, and there was no investigation of the incident. However, *Wolff* does not require any of these measures. Thus, the alleged lack of investigation or polygraph testing does not amount to a due process violation. Plaintiff may proceed with his retaliation claim, but he has failed to state a cognizable claim for a due process violation. Accordingly, to the extent he may have sought to bring a due process claim, it shall be

dismissed with prejudice.

### Count 2 – Racial and Age Discrimination

Racial discrimination by state actors violates the Equal Protection Clause of the Fourteenth Amendment unless it is narrowly tailored to serve a compelling state interest. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Likewise, an equal protection claim may be brought pursuant to 28 U.S.C. § 1983 for age discrimination. *See Levin v. Madigan*, 692 F.3d 607, 617 (7th Cir. 2012).

However, a "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that 'state officials had purposefully and intentionally discriminated against him.'" *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir.), *cert. denied*, 484 U.S. 935 (1987) (citing *Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir. 1982)).

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action. A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

*Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996) (quoting *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).

At this stage of the litigation, Plaintiff's claim that his typewriter was taken, and the no-typewriter policy was adopted, in order to purposely frustrate his and other African-American and elderly inmates' efforts to raise complaints over their conditions of confinement, survives § 1915A review. He may proceed with **Count 2** against Defendants Atchison and Godinez.

### Dismissal of Count 3 – Access to the Courts

Prisoners have a fundamental right of meaningful access to the courts. *Bounds v. Smith*,

430 U.S. 817 (1977). While prison officials have an affirmative duty to provide inmates with reasonable court access, including use of a law library, materials, and assistance needed to prepare legal papers, reasonable access does not mean unlimited access. *Martin v. Davies*, 917 F.2d 336, 338 (7th Cir. 1990) (citing *Hossman v. Sprandlin*, 812 F.2d 1019, 1021 (7th Cir. 1987)). The confiscation of Plaintiff's typewriter no doubt was an inconvenience and perhaps a hardship for him, but courts routinely accept handwritten documents from prison inmates.

Further, in order to maintain a claim for denial of access to the courts, a prisoner must demonstrate that a non-frivolous legal claim has been frustrated or impeded. *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996). In addition to showing that prison officials have failed to provide resources necessary to prepare legal papers, he must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *see also Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). Mere delay or inconvenience is not an unconstitutional detriment. To state a claim, a plaintiff must connect the defendants' conduct with his "inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions," *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010). This requires Plaintiff to identify the underlying claim that was lost. See *Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007).

Plaintiff has not described any lawsuit or claim that he was unable to bring because of his lack of a personal typewriter. Indeed, he was able to clearly articulate his claims in the instant complaint using pen and paper issued by the prison. He thus has not demonstrated that he suffered any unconstitutional detriment or denial of his right to access the courts, and **Count 3**

shall be dismissed with prejudice.

Furthermore, to the extent Plaintiff appears to assert a claim in Count 3 on behalf of other inmates generally, or members of the classes of inmates to which he belongs (African-Americans and those older than 50), he cannot do so. Plaintiff has not moved for certification of a class action, but if he were to do so, certification would be denied. The Federal Rules permit class actions to be maintained only if the class representative "will fairly and adequately protect the interests of the class," FED. R. CIV. P. 23(a)(4), and "[e]very court that has considered the issue has held that a prisoner proceeding *pro se* is inadequate to represent the interests of his fellow inmates in a class action." *Lee v. Gardinez*, No. 11-cv-570-GPM, 2012 WL 143612, at *1 n.1 (S.D. Ill., Jan. 18, 2012) (quoting *Craig v. Cohn*, 80 F. Supp. 2d 944, 946 (N.D. Ind. 2000) (internal citations and quotation marks omitted)). In addition, a plaintiff may not pursue a § 1983 claim alleging that inmates generally are treated in contravention to the Constitution, where he himself did not suffer a constitutional deprivation. *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996). If other inmates were denied access to the courts as a result of the no-typewriter policy, they must assert their own claims.

**Disposition**

**COUNT 3** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. The retaliation claim in **COUNT 1** shall proceed only against Defendant Butler, and is **DISMISSED** without prejudice as to Defendants Atchison and Godinez. The due process portion of **COUNT 1** is **DISMISSED** with prejudice.

The Clerk of Court shall prepare for Defendants **ATCHISON, GODINEZ,** and **BUTLER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a

copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Philip M. Frazier** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge

Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 24, 2014**

*s/J. Phil Gilbert*
United States District Judge